## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARIF DEMIREL, | : | |
|     Petitioner, | : | |
| | : | |
|     v. | : | **Civ. No. 25-5488** |
| | : | |
| FEDERAL DETENTION CENTER | : | |
| PHILADELPHIA, *et al.*, | : | |
|     Defendants. | : | |

**Diamond, J.**                                                           **November 18, 2025**

### MEMORANDUM

Habeas Petitioner Arif Demirel—an "undocumented immigrant"—seeks release from detention, alleging violations of the Immigration and Nationality Act, the Administrative Procedure Act, and due process. See 28 U.S.C. § 2241. (Doc. No. 1.) The Government argues that under the INA, all non-citizens in this county illegally are subject to mandatory detention. See 8 U.S.C. § 1225. (Doc. No. 8.) I agree with Petitioner that the Government has misread the INA, and that Demirel is entitled to a bond hearing before an Immigration Judge. See 8 U.S.C. § 1226.

Although there is no apposite appellate authority, there are 288 district court decisions addressing this issue. In all but six, the Government's interpretation of the INA—the same interpretation it urges here—was rejected. I have set out all 288 decisions in the Appendix to this Memorandum. I agree with the reasoning in the 282 decisions—including two authored by members of this Court. See Cantu-Cortes v. O'Neill, No. 25-6338, 2025 WL 3171639 (E.D. Pa. Nov. 13, 2025); Kashranov v. Jamison, No. 25-5555, 2025 WL 3188399 (E.D. Pa. Nov. 14, 2025).

In light of my ruling that Demirel is entitled to a bond hearing under the INA, I will not address his APA and due process claims.

1

# I.    BACKGROUND

Demirel is a citizen of Turkey.  (Doc. No. 1 ¶ 20.)  In the Spring of 2023, he entered the United States from Mexico "without inspection"—a euphemism denoting that he did so in violation of the law.  See 8 U.S.C. § 1325.  (Id.)  On April 8, 2023, Customs and Border Protection subsequently detained him.  (Id. ¶ 21; Doc. No. 8 at 2.)  The next day, Immigration and Customs Enforcement served Demirel with a Notice to Appear (Form I-862) and an Order of Release on Recognizance (Form I-220A), releasing him to a sponsor in Delaware under the Alternatives to Detention Program.  (Doc. Nos. 1 ¶ 21, 8-1 at 2.)  After applying to Citizenship and Immigration Services for asylum, Demirel received a five-year work permit (Form I-765).  (Id. ¶ 23.)  On November 15, 2023, an Immigration Judge in Philadelphia dismissed removal proceedings for failure to prosecute.  (Doc. 8-1 at 2.)

On September 16, 2025, Delaware State Police arrested Demirel for driving under the influence of alcohol.  (Id. at 3.)  Two days later, ICE arrested Demirel, served him with a Notice to Appear before an IJ in Elizabeth, New Jersey, and detained him at the Philadelphia Federal Detention Center with the intention of initiating removal proceedings.  (Doc 1-4.)  Demirel promptly filed the instant Petition, seeking his release or, in the alternative, the scheduling of a "bond hearing" before an IJ at which his detention could be addressed.  See 8 C.F.R. § 1003.19(d).  (Doc. 1 ¶ 73.)  Demirel was subsequently transferred to the Pike County Correctional Facility.  (Doc. No. 8 at 6.)

The Government opposes habeas relief.  (Doc. No. 8.)  The matter is fully briefed.  (Doc. Nos. 1, 8, 10.)

## II.    LEGAL STANDARDS

I may grant habeas relief to any person "in custody in violation of the Constitution or laws or treaties of the United States."  8 U.S.C. § 2241(c)(3).  "Habeas is a core remedy for unlawful executive detention" that is "regularly invoked on behalf of noncitizens."  Munaf v. Geren, 553 U.S. 674, 693 (2008); INS v. St. Cyr, 533 U.S. 289, 301 (2001).

Although immigration courts may offer helpful guidance on matters like this one, I must exercise "independent judgment."  Loper Bright Enters. v. Raimondo, 603 U.S. 369, 385–86, 388 (quoting Skidmore v. Swift & Co., 323 U.S. 134, 139–40 (1944)).

## III.    RESPONDENTS

"The federal habeas statute straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'"  Rumsfeld v. Padilla, 542 U.S. 426, 434 (2004) (quoting 28 U.S.C. § 2242).  See also 28 U.S.C. § 2243 ("The writ . . . shall be directed to the person having custody of the person detained.")  Accordingly, "in habeas challenges to present physical confinement—'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official."  Padilla, 542 U.S. at 435.

Here, named Respondents are: the Warden of FDC Philadelphia (Jamal Jamison), the Acting Director of the ICE Philadelphia Field Office (Brian McShane), the Acting Director of ICE (Todd Lyons), and the Secretary of Homeland Security (Kristi Noem).  (Doc. No. 1.)  Because Mr. McShane has the authority to effectuate Demirel's release, he is a proper Respondent.  See Corona Diaz v. Olson, No. 25-12141, 2025 WL 3022170, at *1 (N.D. Ill. Oct. 29, 2025).  As Mr. Jamison is no longer Demirel's custodian, and Mr. Lyons and Ms. Noem are "remote supervisory official[s]," I will dismiss them as Respondents.  See Padilla, 542 U.S. at 435.

## IV.    JURISDICTION

The Government argues that I must dismiss for want of jurisdiction.  (Doc. No. 8 at 9–14 (citing 8 U.S.C. §§ 1252(b)(9), 1252(g), and 1252(a)(2)(B)(ii)).)  I disagree.

### A.    Section 1252(b)(9)

This statute provides that: legal claims "arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."  8 U.S.C. §§ 1252(b)(9).  Those claims must be filed "with an appropriate court of appeals."  § 1252(a)(2)(D).  The Government urges that because Demirel's claims "arise from" the commencement of removal proceedings, they are barred by § 1252(b)(9).  (Doc. No. at 11–14.)

Yet, § 1252(b)(9) "does not reach 'claims that are independent of, or wholly collateral to, the removal process.'"  E.O.H.C. v. Sec'y United States Dep't of Homeland Sec., 950 F.3d 177, 186 (3d Cir. 2020) (quoting Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec., 510 F.3d 1, 11 (1st Cir. 2007)).  The Supreme Court has defined "removal process" with respect to those undocumented immigrants who seek to be heard on their continuing detention:

> [Habeas Petitioners] are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined. Under these circumstances, § 1252(b)(9) does not present a jurisdictional bar.

Jennings v. Rodriguez, 583 U.S. 281, 294–95 (2018).

Demirel challenges the denial of a bond hearing, which regulations of the Executive Office for Immigration Review provide is "independent of" and "collateral to" the removal process. E.O.H.C., 950 F.3d at 186.  See 8 C.F.R. § 1003.19(d) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be

separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding.") (See Doc. No. 1.)

Moreover, § 1252(b)(9) "does not strip jurisdiction when aliens seek relief that courts cannot meaningfully provide alongside review of a final order of removal." E.O.H.C., 950 F.3d at 186; id. at 180 ("If 'later' is not an option, review is available now.") Later is not an option here, because the Court of Appeals could not "meaningfully" redress Demirel's purportedly unlawful denial of release on bond should his final removal be ordered.

Accordingly, § 1252(b)(9) does not bar this Court's review of the decision to refuse Demirel a bond hearing. See E.O.H.C., 950 F.3d at 180.

**B.    Section 1252(g)**

This statute provides that: "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). "[T]he provision applies only to [these] three discrete actions." Reno v. Am.-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999). Section 1252(g) is thus even "narrower" than § 1252(b)(9) and should not be read as a "general jurisdictional limitation." Reno, 583 U.S. at 487; Dep't of Homeland Sec. v. Regents of the Univ. of California, 591 U.S. 1, 19 (2020).

Again, Demirel seeks a bond hearing; he does not challenge the commencement, adjudication, or execution of his removal (which may not even occur). (See Doc. No. 1.) The Government's contention that his claims "arise from" the commencement of removal proceedings is thus incorrect. See Reno, 525 U.S. 471, 482; Jennings, 583 U.S. at 294; Tazu v. Att'y Gen. United States, 975 F.3d 292, 296 (3d Cir. 2020). (Doc. No. 8 at 9–11.) See also Mohammed H. v.

Trump, No. 25-1576, —— F. Supp. 3d ——, ——, 2025 WL 1692739, at *2 (D. Minn. June 7, 2025) (no jurisdictional bar when the petitioner "is not seeking to pause or end his removal proceedings").

Accordingly, Section 1252(b)(9) does not bar this Court's review.

### C.    Section 1252(a)(2)(B)(ii)

This statute provides that: "no court shall have jurisdiction to review any other decision or action of the Attorney General or Secretary of Homeland Security the authority for which specified under to be in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B)(ii).

The Government thus argues that "courts may not entertain a challenge to a discretionary decision under the INA."  (Doc. No. 8 at 14.)  Yet, the Government's statutory detention power is "not a matter of discretion."  Zadvydas v. Davis, 533 U.S. 678, 688 (2001).  See also Mirzoev v. Olson, No. 25-12969, 2025 WL 3101969, at *2 (N.D. Ill. Nov. 6, 2025) (same).

Section 1252(a)(2)(B)(ii) thus also does not apply here.

## V.    EXHAUSTION

The Government also argues that I must dismiss Demirel's claims because Demirel has failed to raise them first before an IJ and the Board of Immigration Appeals.  (Doc. No. 8 at 14–16.)  Again, I disagree.

Although habeas petitioners are "ordinarily required to exhaust their administrative remedies," they "need not exhaust administrative remedies where the issue presented involves only statutory construction."  Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996); Vasquez v. Strada, 684 F.3d 431, 433–34 (3d Cir. 2012) (citing Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981).  As I discuss below, Demirel's claims turn on how INA Sections 235

and 236 are construed.  See del Cid v. Bondi, No. 25-304, 2025 WL 2985150, at *13 (W.D. Pa. Oct. 23, 2025).  Exhaustion is thus not required.

Exhaustion "is likewise not required when it would be futile."  del Cid, 2025 WL 2985150, at *13 (citing Rose v. Lundy, 455 U.S. 509, 516 n.7 (1982)).  In Yajure Hurtado, the Bureau of Immigration Appeals, construing Sections 235 and 236, held that IJs "lack authority to hear bond requests or to grant bond to aliens . . . who are present in the United States without admission." 29 I. & N. Dec. at 225.  As the Government acknowledges, "this is the law of the land in immigration court today."  (Doc. No. 8 at 21 n.2.)  Because the BIA has "predetermined the statutory issue," Demirel has "no reasonable prospect of obtaining relief" through administrative remedies.  Corona Diaz, 2025 WL 3022170, at *3 (citing Gonzalez v. O'Connell, 355 F.3d 1010, 1018–19 (7th Cir. 2004)); del Cid, 2025 WL 2985150, at *13.  Again, exhaustion is not required.

Accordingly, I will not dismiss for failure to exhaust.

## VI.    LEGAL BASIS FOR DETENTION

The gravamen of this dispute is whether Demirel's detention is mandatory under INA § 235(b) (8 U.S.C. § 1225(b)) or discretionary under § 236(a) (8 U.S.C. § 1226(a)).  "The vast majority of courts confronting this precise issue have rejected [the Government's] interpretation, and the BIA's interpretation in Hurtado, as contradictory to the plain text of § 1225."  Ayala Amaya v. Bondi, No. 25-16429, 2025 WL 3033880, at *2 (D.N.J. Oct. 30, 2025) (collecting cases).  Once again, of the 288 district court decisions to address the issue, 282 have determined that § 1226(a) applies or likely applies in situations similar to those presented here.  See Appendix.  Those decisions are plainly correct.

Section 1225(b) provides that: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and

beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Detention is mandatory in those circumstances. See Jennings, 583 U.S. at 300.

Section 1226(a) provides that: "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Aliens detained under § 1226(a) may appeal an "initial custody determination"—including the setting of bond—to an IJ. 8 C.F.R. § 1236.1(d)(1). See also Jennings, 583 U.S. at 288–89 (the AG "may release" noncitizens on "bond" or "conditional parole," "except as provided in subsection (c)") (quoting §§ 1226(a) and (c)).

Here, Demirel was already in the United States—not actively "seeking admission"—when he was arrested for DUI in 2025. (See Doc. Nos. 1, 8.) The Supreme Court has explained that "aliens already in the country pending the outcome of removal proceedings" may be detained pursuant to § 1226(a). Jennings, 583 U.S. at 289. That the statute allows discretionary detention is presumably why the Government released Demirel on recognizance in 2023. (Doc. Nos. 1 ¶ 21, 8-1 at 2.) Such a release is authorized only under § 1226(a), not § 1225(b), which requires the AG to release from detention an "undocumented immigrant" (like Demirel) only "for urgent humanitarian reasons or significant public benefit." See § 1182(d)(5)(A). (Doc. Nos. 1 ¶ 21, 8-1 at 2.) The Government does not suggest that these were the reasons for Demirel's 2023 release. (See Doc. Nos. 8-1, 8-2.)

If, as the Government argues, § 1225(b) applies to all "applicant[s] for admission," then there was no need for Congress to limit the statute's application to "alien[s] seeking admission." I am not prepared to read this part of § 1225(b) out of existence. See United States ex rel. Polansky v. Exec. Health Res., Inc., 599 U.S. 419, 432 (2023) ("[E]very clause and word of a statute should

8

have meaning."). Yet, that is what the Government asks me to do. Further, if all aliens here illegally are already subject to mandatory detention under § 1225(b), then the Laken Riley Act's recent expansion of mandatory detention under § 1226(c)(1)(E) would also be beside the point. See Pub. L. No. 119-1, 139 Stat. 3 (2025). Once again, I am not prepared to render an Act of Congress superfluous. Stone v. I.N.S., 514 U.S. 386, 397 (1995) ("When Congress acts to amend a statute, we presume it intends its amendment to have real and substantial effect.").

The Government nonetheless argues that §§ 1225(b) and 1226(a) simply "overlap and are not mutually exclusive." (Doc. No. 8 at 22 (citing Vargas Lopez v. Trump, No. 25-526, 2025 WL 2780351 (D. Neb. Sept. 30, 2025).) Yet, as the AG very recently recognized, "section [1225] (under which detention is mandatory) and section [1226] (under which detention is permissive) can be reconciled only if they apply to different classes of aliens." Romero v. Hyde, No. 25-11631, —— F. Supp. 3d ——, ——, 2025 WL 2403827, at *11 (D. Mass. Aug. 19, 2025) (quoting Matter of M-S-, 27 I. & N. Dec. 509, 516 (Att'y Gen. 2019). Moreover, only three months ago, the Government did not dispute that these provisions are mutually exclusive. Lopez Benitez v. Francis, No. 25-5937, —— F. Supp. 3d ——, ——, 2025 WL 2371588, at *3 (S.D.N.Y. Aug. 13, 2025). It is thus difficult to credit the Government's squarely contradictory position here.

In these circumstances, the law is clear: the Government detained Demirel pursuant to § 1226(a), which allows him to seek bond a hearing before an IJ.

## VII.    RELIEF

I will refrain at this time from ordering Demirel's immediate release. Rather, I will order Mr. McShane (the remaining Respondent) to afford Demirel the procedural protections that § 1226(a) provides: a bond hearing before an IJ and an appeal to the BIA should the IJ deny bond. See 8 C.F.R. § 1236.1(d)(1).

## VIII.    CONCLUSION

Pursuant to 8 U.S.C § 1226(a), I will grant Demirel's Petition to the extent that he seeks an Order requiring a bond hearing before an Immigration Judge and an appeal to the Bureau of Immigration Appeals.  In light of my decision, I will not also address Demirel's APA and due process contentions.

An appropriate Order follows.

**BY THE COURT.**

*/s/ Paul S. Diamond*
_____
**PAUL S. DIAMOND, J.**